IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

WATERS EDGE LIVING, LLC,
a Florida Limited Liability Company;
and WATERS EDGE JW, LLC,
a Florida Limited Liability Company,
        Plaintiffs,

v.                              CASE NO.: 4:08cv69-SPM/WCS

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, a Georgia
Corporation,
        Defendant.
_____/

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This cause comes before the Court on the cross motions for summary judgment. Docs. 45 and 48. The parties have had the opportunity to submit materials in accordance with Northern District of Florida Local Rule 56.1. For the following reasons, Defendant's motion for summary judgment will be granted and Plaintiffs' motion for summary judgment will be denied.

**I.    Background**

Plaintiffs purchased the Waters Edge Apartments ("Waters Edge") in Gulfport, Mississippi, from Prime Income Asset Management, Inc. ("Prime") on July 29, 2005. The purchase price was $16,350,000. Because Plaintiffs were

unable to secure affordable property insurance in time for the closing, Prime agreed to make arrangements for Waters Edge to be covered under Prime's commercial property insurance policy program for nine months following closing.

Prime's insurance had three layers of coverage totaling $100 million. Lloyds of London provided the primary coverage with a policy limit of $10 million. Defendant ("Westchester") provided excess coverage with a policy limit of $10 million. RSUI Indemnity Company provided a second layer of excess coverage in the amount of $80 million. Five properties, including Westchester, were covered under the policies.

On August 29, 2005, Hurricane Katrina destroyed Waters Edge and damaged the other properties. Lloyds of London, Westchester, and RSUI Indemnity Company each paid its policy limits. These amounts, however, were not sufficient to cover the full losses suffered by Waters Edge and the other properties.

Prime allocated to Plaintiffs $1.82 million from the Lloyds of London policy to cover Plaintiffs' lost rents. This amount represented a pro rata share of the loss on the Waters Edge property in relation to the other insured properties. Plaintiffs eventually recovered $24 million more from the RSUI policy through a settlement with Prime after RSUI filed an interpleader action.[1]

---

[1] Waters Edge Living, LLC v. RSUI Indemnity Co., 4:06cv334-RH-WCS.

Plaintiffs are suing Westchester because Westchester paid its $10 million policy limit directly to Prime. In Count One of the complaint, Plaintiffs contend that because Westchester and Plaintiffs adjusted the claim, Westchester should have paid its policy limits to Plaintiffs, or at least included Plaintiffs as a payee. In Counts Two and Three, Plaintiffs allege claims for common law bad faith and statutory bad faith.

## II.     ANALYSIS

### A.     Settlement of Claim

Plaintiffs base their right to relief for Count One not on the underlying insurance policy, but on a purported settlement agreement that arose when Westchester and Plaintiffs adjusted the cost to repair Waters Edge. Wes Baldwin was the public adjuster retained by both Plaintiffs and Prime for their respective claims. Doug White was the adjuster retained by the insurers. The adjustment process resulted in an agreed upon figure of $30,929,371.50 as the cost to repair Waters Edge.[2]

According to Plaintiffs, the adjustment did not represent Plaintiffs full loss, but Plaintiffs agreed to a lesser amount in exchange for an assurance that it would be paid first. According to Plaintiffs, Westchester and RSUI were

---

[2] According to White, the cash value of the damages, after applying depreciation, was $24,743,500. Westchester's policy provides for payment of actual cash value, as opposed to repair cost, if the property is not repaired.

obligated to pay Plaintiffs directly and immediately, with Westchester tendering its $10,000,000 policy limit and RSUI paying the remainder. This is despite that fact that there were other covered properties that had not yet been adjusted, and that the total loss amount would exceed the total amount of coverage.

Although Plaintiffs cite to case law establishing that adjustment of a loss is in effect a settlement agreement to pay the adjustment amount, the problem with Plaintiffs' position is that the adjustment process in this case was atypical. It involved three separate insurers and five separate properties. The total losses exceeded the amount of total coverage.

Westchester maintains that the adjustment process resulted only in an agreement of the amount of loss sustained by Plaintiffs, not an agreement for Westchester to to pay its policy limits to Plaintiffs directly. According to Westchester, at all times it intended to make payment in accordance with the loss payable clause of its policy, which means either paying Prime or making payment as directed by Prime.

Plaintiffs rely on statements made by the insurers' adjuster, Doug White, to support their contention that Westchester specifically agreed to pay its policy limits to Plaintiffs. In his sixth report, White suggested that Westchester's payment be made to Plaintiffs. However, as the other properties were being adjusted, White recommended that Westchester issue the checks only to Prime and its mortgagees. Plaintiffs adjuster, Wes Baldwin, did not object. Plaintiffs

themselves were engaged in discussions with Prime about apportioning the payments on a pro rata basis. At no point did Westchester agree that Westchester would pay its policy limits to Plaintiffs.

Plaintiffs' conclusion that the adjustment of its loss resulted in a settlement agreement that obligated Westchester to pay its policy limit to Plaintiffs without regard to Prime's claims is not supported by the facts. Plaintiffs fail to sustain a genuine issue of material fact concerning the existence of such an agreement. Accordingly, summary judgment will be granted to Westchester.

### B. Bad Faith

In general, a colorable claim for bad faith must be grounded in a breach of the insurance policy. See Allstate Ins. Co. v. Regar, 942 So. 2d 969, 971-72 (Fla. 2d DCA 2006); Liberty Nat'l Fire Ins. Co. v. Akin, 927 S.W.2d 627, 619 (Tex. 1996); Toonen v. United Services Auto. Ass'n, 935 S.W.2d 937, 941-42 (Tex. App. 1996). Here, Plaintiffs' claims against Westchester are not based on the insurance policy Westchester had with Prime. They are based on a alleged bad faith handling of Plaintiffs' adjusted loss. Plaintiffs maintain that the adjustment of the loss created a separate agreement, independent of the insurance contract, that obligated Westchester to pay its policy limits to Plaintiffs. As the Court has already determined, the evidence is insufficient to support Plaintiffs' claim that such an agreement was made.

To the extent, however, that Plaintiffs also allege breach of the insurance

contract as a basis for the bad faith claims, the claims must fail. Plaintiffs never notified Westchester that they had not resolved allocation of the payment with Prime. Furthermore, Plaintiffs, through their adjuster Wes Baldwin, agreed or at least acquiesced to Westchester making payment directly to Prime. Plaintiffs did not object to the method of payment. Moreover, Westchester had a reasonable basis for making the payment to Prime in accordance with the loss payable provision of the insurance contract. Given all the circumstances, Plaintiffs cannot establish that Westchester acted in bad faith. Accordingly, summary judgment will be granted to Westchester.

Based on the foregoing, it is

ORDERED AND ADJUDGED:

1.  Plaintiffs' motion for summary judgment (doc. 48) is denied.

2.  Defendant Westchester's motion for summary judgment (doc. 45) is granted.

3.  The clerk shall enter judgment in favor of Defendant Westchester, denying all relief to Plaintiffs on their claims.

DONE AND ORDERED this 30th day of September, 2009.

*s/ Stephan P. Mickle*
Stephan P. Mickle
Chief United States District Judge

CASE NO.: 4:08cv69-SPM/WCS